UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTONIO ELPIDIO GOMEZ-ALCINA,

        Petitioner,

v.

KRISTI NOEM, GARRET RIPA, MATTHEW MORDANT, PAMELA BONDI, TODD M. LYONS,

        Respondents.

Case No. 2:25-cv-1164-KCD-DNF

# ORDER

Petitioner Antonio Elpidio Gomez-Alcina is a noncitizen currently detained by Immigration and Customs Enforcement at Alligator Alcatraz. This comes after he was previously released from immigration custody on an "Order of Supervision (OSUP) issued [in] 2015." (Doc. 1 ¶ 20.)[1] According to Petitioner, "he has lived lawfully in the community pursuant to OSUP and has remained in full compliance with all conditions of his supervision." (*Id.*) Even so, when Petitioner "appeared for his [latest] routine ICE check-in," he was detained without notice (*Id.* ¶ 23.)

Petitioner has filed a habeas corpus petition challenging his detention and the "unlawful revocation of his longstanding Order of Supervision." (*Id.* at

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

2.) According to Petitioner, his "re-detention bears no reasonable relationship to any legitimate purpose" and thus violates the Due Process clause. (*Id.* ¶ 61.) He also claims that ICE revoked the "OSUP without prior notice, without a meaningful opportunity to be heard, and without any individualized findings that he posed a danger to the community or a risk of flight, as required by statute and regulation." (*Id.* at 2.)

Now before the Court is Petitioner's Motion for Temporary Restraining Order. (Doc. 6.) He seeks an order "enjoining Respondents, and all persons acting in concert with them from removing Petitioner from the United States or transferring him outside the Middle District of Florida, Fort Myers Division, during the pendency of this action." (*Id.* at 19-20.)

To obtain a temporary restraining order, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). Additionally, a court

may issue temporary injunctive relief without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

To begin, the Court is satisfied that Petitioner fulfilled the procedural requirements needed to issue a temporary restraining order. Counsel has set out specific facts showing that immediate and irreparable injury may result before the adverse party can be heard—namely, Petitioner could be relocated outside this Court's jurisdiction or deported. Counsel also sent copies of the motion to the U.S. Attorney's Office. Nothing more is needed at this point.

Turning to the merits, Petitioner has shown a substantial likelihood of success. His claims stem from the same underlying allegation: "ICE revoked [his] OSUP abruptly and without prior notice, without stating any lawful basis for revocation, and without affording [him] any opportunity to respond." (Doc. 6 at 10.) The Court agrees that these facts create a redressable claim.

Respondents have the authority to detain noncitizens with final orders of removal to effectuate deportation. *See* 8 U.S.C. § 1231; *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). But when an alien, such as Petitioner, has been released from immigration detention, certain ICE regulations govern how and

3

when the agency may revoke that release and re-detain the noncitizen. *See* 8 C.F.R. §§ 241.13(i), 241.4(l).

Under the current regulations, ICE may re-detain noncitizens if, for example, they violate the "conditions of release" or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(2). Upon revocation of release, the noncitizen "will be notified of the reasons for the revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); *see also United States v. Chinchilla*, 987 F.3d 1303, 1310 (11th Cir. 2021) ("In order to remove an unlawful alien subject to an order of supervision, immigration officials must first revoke the order of supervision, and must notify the alien of the reasons for revocation[.]").

"ICE, like any agency, has the duty to follow its own federal regulations." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017); *see also Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1260 (11th Cir. 2014). But according to the current record, that didn't happen here. ICE allegedly "failed to provide Petitioner with notice of the reasons for revocation and an opportunity to be heard." (Doc. 1 ¶ 76.) "Because ICE violated its own

regulations when it detained [Petitioner] without notifying him of the reasons why he was being detained, [he] is [arguably] entitled to habeas relief." *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025); *see also Nguyen v. Bondi*, No. EP-25-CV-323-KC, 2025 WL 3120516, at *6 (W.D. Tex. Nov. 7, 2025) ("Some courts have found such a failure to be, in and of itself, a violation of due process mandating habeas relief."); *N.A.L.R. v. Bondi*, No. 4:25-CV-00192-SEB-KMB, 2025 WL 2987239, at *3 (S.D. Ind. Oct. 23, 2025).

Petitioner has likewise demonstrated irreparable injury in the absence of immediate relief. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020). Without interim relief to maintain the status quo, Petitioner could be deported or removed from this Court's jurisdiction, effectively foreclosing any recourse. *See, e.g.*, *Zapeta v. Exec. Dir. of the Fla. Div. of Emergency Mgmt.*, No. 2:25-CV-00697-JLB-KCD, 2025 WL 2432501, at *3 (M.D. Fla. Aug. 22, 2025) (denying habeas petition as moot where petitioner had been deported because, "[a]s a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody").

Lastly, the balance of equities and public interest favors injunctive relief. The Court is only ordering that Petitioner remain within its jurisdiction until

his habeas petition is decided. So the harm to Respondents is minimal. And because Petitioner is potentially detained unlawfully, neither equity nor the public's interest is furthered by holding him without due process. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) ("Of course there is a public interest in preventing aliens from being wrongfully removed[.]").

The Court also exercises its discretion to dispense with Rule 65(c)'s bond requirement. There is no realistic likelihood of harm to the Government from the relief ordered. Thus, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Ajugwe v. Noem*, No. 8:25-CV-982-MSS-AEP, 2025 WL 1370212, at *10 (M.D. Fla. May 12, 2025).

Petitioner has raised serious questions regarding ICE's authority to detain him, and in light of the cited caselaw, he has shown a substantial likelihood of success on the merits. If ICE's immediate detention is unlawful, or ICE improperly removes Petitioner from the United States, the harm to him is immediate and irreparable and potentially forecloses any recourse. Accordingly, to provide the parties and the Court an opportunity to adjudicate the claims in the petition, a temporary restraining order is appropriate to maintain the status quo. *See, e.g.*, *Shahla v. Rhoden*, No. 3:25-CV-1404-MMH-SJH, 2025 WL 3227544, at *3 (M.D. Fla. Nov. 19, 2025).

For these reasons, Petitioner's Motion for Temporary Restraining Order (Doc. 6) is **GRANTED**. Respondents are enjoined from removing Petitioner from the United States or the Middle District of Florida. This order will remain in effect until January 2, 2026. To the extent Petitioner's motion seeks any different or further relief, it is **DENIED**. Petitioner is directed to expeditiously serve this order on Respondents and file proof of the same.

**ORDERED** in Fort Myers, Florida on December 19, 2025.

Kyle C. Dudek
United States District Judge