UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTONIO ELPIDIO GOMEZ-
ALCINA,

        Petitioner,

    v.

KRISTI NOEM, GARRET RIPA,
MATTHEW MORDANT, PAMELA
BONDI, TODD M. LYONS,

        Respondents.

Case No. 2:25-cv-1164-KCD-DNF

## <u>ORDER</u>

This case is about the Government's power to press pause on a noncitizen's liberty while it tries to press play on their deportation. Petitioner Antonio Gomez-Alcina has lived in the United States for forty-five years. For the last ten, he has been free on an order of supervision—a kind of immigration parole where he checks in periodically but otherwise lives his life.

That changed on December 5, 2025, when the Government revoked Gomez-Alcina's supervision and took him back into custody. He has now filed a habeas corpus petition to challenge that confinement. (Doc. 1.)[1] He says the Government broke the rules: that they revoked his freedom without the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

proper interview, that the wrong official signed the paperwork, and that his detention has no end in sight. (*Id.* at 19-30.)

The Government meets the petition with two arguments. (Doc. 8.) As a threshold matter, it argues that this Court lacks subject-matter jurisdiction to review the claims. (*Id.* at 3-5.) On the merits, the Government contends that it did exactly what the law permits. By revoking Gomez-Alcina's release to enforce a final removal order, the agency satisfied both its own regulations and the Constitution's due process demands. (*Id.* at 6-11.)

The Government is wrong that the courthouse doors are closed to Gomez-Alcina. But as discussed below, he has failed to show that his return to custody is unlawful. His habeas petition thus fails.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Government first claims that two provisions of the Immigration and Nationality Act—8 U.S.C. § 1252(g) and § 1252(b)(9)—strip this Court of jurisdiction. The argument goes like this: Gomez-Alcina is being detained so he can be removed; therefore, his lawsuit arises from the "execution" of a removal order, and Congress has said district courts cannot touch that.

The Government's reading is too broad. It treats the INA's jurisdiction-stripping provisions like a black hole, sucking in any claim that has even a tangential relationship to a removal order. But the Supreme Court has told us to read these statutes much more narrowly. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018).

First up, § 1252(g) says that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* This provision "limits habeas corpus jurisdiction, including under § 2241." *Islas v. DHS/ICE Off. of Chief Couns. - ATD*, No. CV 323-002, 2023 WL 2761710, at *1 (S.D. Ga. Jan. 23, 2023); *see also Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 961 (11th Cir. 2015).

But § 1252(g) does not cover "all deportation-related claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478 (1999). It has a far

3

narrower reach. It forecloses judicial review of three discrete actions by the Attorney General: her "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 482. As the Supreme Court recently reiterated, § 1252(g) does not "sweep in any claim that can technically be said to arise from the three listed actions." *Jennings*, 583 U.S. at 294. Instead, it "refer[s] to just those three specific actions themselves." *Id.*

Gomez-Alcina's petition steers clear of those forbidden actions. He is not asking this Court to vacate his removal order or to stop the Government from putting him on a plane. Instead, he is challenging the procedural mechanics of his current detention. His argument is that the Government failed to follow its own rulebook when it revoked his release. Specifically, it skipped the required interview and allowed an unauthorized official to sign the revocation notice. A claim that the Government locked someone up in violation of binding regulations is a challenge to the process of detention, not a challenge to the commencement or execution of a removal order. *See, e.g.*, *Navarro v. Bondi*, No. 8:25-CV-3213-KKM-NHA, 2025 WL 3275944, at *2 (M.D. Fla. Nov. 25, 2025).

The core of this case is not about the Attorney General's decision to detain Gomez-Alcina. It's about whether the Government followed its own regulations in that process. (*See* Doc. 1.) Such a claim is best understood as independent of, and collateral to, removal because it may be resolved without

affecting the Attorney General's prosecutorial discretion that § 1252(g) was meant to preserve. *See Reno*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."); *see also Arroyo v. Diaz*, No. 25-62676-CIV, 2026 WL 279656, at *4 (S.D. Fla. Feb. 2, 2026); *Banega v. Noem*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026).

Next up is the so-called "zipper clause," which "bars review of claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting 8 U.S.C. § 1252(b)(9)). This discussion can be short. The Eleventh Circuit has held "that the zipper clause only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Gomez-Alcina is not challenging a removal order. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

With the jurisdictional underbrush cleared away, the Court can turn to the merits. Gomez-Alcina's claims are addressed in turn.

**Count I—Substantive Due Process**

The Fifth Amendment entitles noncitizens to due process during deportation proceedings. At the same time, however, "detention during

deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024)

("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Gomez-Alcina cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Gomez-Alcina's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

Nor are we anywhere near the constitutional danger zone. ICE re-detained Gomez-Alcina on December 5, 2025. He has been in custody for just 89 days. That is a far cry from the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls well within the six-month window the Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month

7

period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing"). When the Government holds a noncitizen for only a few months to execute a valid removal order, it is not doling out a penalty. It is simply doing what the regulatory scheme authorizes. Because his brief confinement remains firmly tethered to a legitimate, civil immigration purpose, Gomez-Alcina's substantive due process claim fails. *See H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *3 (M.D. Ga. Sept. 15, 2021); *Gudino v. Lowe*, No. 1:25-CV-00571, 2026 WL 526366, at *8 (M.D. Pa. Feb. 25, 2026) ("[T]he length of detention is generally not unreasonable until the noncitizen has been detained for more than six months.").

### Count II—Procedural Due Process

For starters, it's not entirely clear that Gomez-Alcina is entitled to a freestanding due process analysis at this time. When the Supreme Court confronted the constitutional perils of indefinite immigration detention in *Zadvydas*, it did not instruct lower courts to start weighing the process afforded to the detainee. It set a timer. For the first six months, detention is presumptively reasonable. *Zadvydas*, 533 U.S. at 701. So until that timer goes off, *Zadvydas* itself seemingly supplies the constitutional metric. *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the

8

*Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024). Because Gomez-Alcina's detention is barely out of the starting gate, he is presumably not yet entitled to anything more.

But even if we assume the due process clause applies with full force, Gomez-Alcina still comes up empty. His claims boil down to a familiar grievance: the Government ignored its own regulations. (Doc. 1 ¶ 66.) Relying on 8 C.F.R. § 241.4(l), he alleges that ICE locked him back up without providing the required notice or the "initial formal interview" mandated "promptly" after his return to custody. *Id.* He also claims that his revocation is void because it was signed by a subordinate officer rather than one of the specific, high-ranking officials listed in § 241.4(l)(2). By ignoring the agency's rulebook, the logic goes, the Government short-circuited his constitutional rights. (*Id.* ¶ 68.)

The problem with this argument is foundational: Gomez-Alcina is reading the wrong regulation. He hangs his entire procedural hat on the revocation procedures laid out in 8 C.F.R. § 241.4(l). (Doc. 1 ¶¶ 42-43.) But he fails to establish that this provision actually governs his case. While § 241.4 generally applies to aliens detained pending removal, like Gomez-Alcina, its "custody review procedures . . . do not apply after the Service has made a determination . . . that there is no significant likelihood that an alien under a

final order of removal can be removed in the reasonably foreseeable future." *Id.* § 241.4(b)(4). In those circumstances, 8 C.F.R. § 241.13 supplies the framework for re-detention. *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026).

The only way to read the record here is that Gomez-Alcina falls into the latter camp. The Government admits as much in its briefing, explaining that he was previously released because it could not effectuate his deportation. (Doc. 8 at 2.) The paperwork confirms it. Look at the order of supervision itself. (Doc. 1-3.) It does not reflect a discretionary, case-by-case decision to release him under § 241.4(e). Instead, the order explicitly rests on ICE's inability to execute his removal—the precise trigger for a release under § 241.13. Because his initial release was governed by § 241.13, the mechanics of his revocation are covered by that same provision. Section 241.4 simply has no role to play here, and Gomez-Alcina has not shown otherwise. *See, e.g.*, *Saengnakhone S. v. Noem*, No. 25-CV-4775 (ECT/LIB), 2026 WL 34132, at *5 (D. Minn. Jan. 6, 2026).

That regulatory mismatch—demanding the procedures of § 241.4 when § 241.13 actually controls—is fatal. In a habeas proceeding, the burden rests squarely on the petitioner to prove that their physical custody violates the Constitution or laws of the United States. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his

10

right to habeas relief and he must prove all facts necessary to show a constitutional violation."). Pointing to a regulation that does not govern the dispute is a legal dead end. To state the obvious, the Government cannot deprive a petitioner of a procedural right he never possessed. *See Saengnakhone*, 2026 WL 34132, at \*5.

Because Count II is anchored to the wrong regulatory framework, Gomez-Alcina has not shown that the Government deprived him of the process he was due. While substituting the correct regulation and forging ahead to address this claim might seem like a win for judicial economy, that would be inappropriate. Efficiency cannot override the strict limits of the judicial role. We are umpires, not backup counsel. *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) ("American courts function in an adversarial system of adjudication whereby we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). Without a challenge to the procedures that actually apply to his revocation, Gomez-Alcina's due process claim hits a dead end.

**Counts III, IV & V—Administrative Procedure Act**

In these claims, Gomez-Alcina invokes the Administrative Procedure Act ("APA"). (Doc. 1 at 24-28.) He argues that the Government's decision to revoke his release was arbitrary, capricious, and contrary to law. The

difficulty here is twofold. First, Gomez-Alcina has brought these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for these claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Gomez-Alcina has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025)

12

(Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Gomez-Alcina is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at *3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

### Count VI—Accardi Doctrine

Finally, Gomez-Alcina invokes the Accardi doctrine, which "stands for the unremarkable proposition that an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). Again relying on the procedural guarantees in 8 C.F.R. § 241.4, he claims that the Government violated its regulations when revoking his supervised release. (Doc. 1 ¶¶ 95-96.) But this claim is just a rerun of the argument already dismantled above. *Accardi* requires an agency to follow the rules that actually govern its conduct, not the rules a petitioner wishes applied. As already established, § 241.4(l) simply does not control Gomez-Alcina's return to custody.

### III. Conclusion

Gomez-Alcina has not established that his current detention is unlawful. But that failure is largely a product of how and when he brought this challenge. He swung at the Government using the wrong regulatory

playbook, anchoring his case to a regulation that does not govern his return to custody. And constitutionally, his time in detention has not yet crossed the threshold that triggers deeper judicial scrutiny. That means his petition fails today—but not forever. Gomez-Alcina may return to challenge his revocation under the correct framework (8 C.F.R. § 241.13) or if his continued detention becomes unconstitutionally prolonged.

Accordingly, the Verified Petition for Habeas Corpus (Doc. 1) is **DENIED WITHOUT PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment, deny any pending motions as moot, and close this case.

**ORDERED** in Fort Myers, Florida on March 4, 2026.

Kyle C. Dudek
United States District Judge